Sarah Jane ENGLISH, Appellant,

v.

Jerry FISCHER, et ux, Appellees.

No. 2201cv.

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1982.

James W. Wray, Jr., Kleberg, Dyer, Redford & Weil, Corpus Christi, Wm. B. Hilgers, Mark Perlmutter, Hilgers, Watkins & Kazen, Austin, for appellant.

James R. Harris, J. Norman Thomas, Harris, Cook & Browning, Corpus Christi, for appellees.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is a suit for damages that arose from a dispute between a mortgagor and a mortgagee over the proceeds of a fire insurance policy. Jerry and Alice Fischer, appellees, purchased a home from appellant, Sara Jane English (Rylee). Appellant was the mortgagee and appellees were mortgagors. Appellees signed a promissory note secured by a deed of trust which stipulated that they provide for fire insurance and name appellant as beneficiary of that policy. A fire severely damaged the home and the insurance company issued a check payable to both parties. Appellees wanted to rebuild the house with the money but appellant refused to endorse the check. She demanded payment for the unpaid balance on the note.

The insurance company tendered the money into the registry of the court. The money was released to appellees after they posted a bond.

Appellees filed a cross-action for damages against appellant alleging a breach of contract, breach of warranty and a cause of action under the Deceptive Trade Practices Act (DTPA).[1] Appellant denied that she had a duty to endorse the check and asserted that she had a right to accelerate the note because the house was not fully insured.

The case was tried before a jury and the jury answered all issues in appellees' favor. The trial court gave appellant an offset for the unpaid balance of the note, awarded damages and attorney's fees to appellees but denied treble damages and prejudgment interest. Both sides appealed. We affirm in part and reverse and render in part.

The circumstances which gave rise to this suit are as follows:

In August, 1967, Robert T. Rylee, II, and his wife, Sara Jane E. Rylee, while their divorce was pending, sold their home to appellees. The purchase price was $67,500.00 and the terms were as follows: $5,000.00 in cash with the sellers (Rylee) agreeing to finance the balance at 5¼% interest to be paid in $300.00 monthly installments with the further condition that "purchaser agrees to carry fire and extended coverage insurance on said property in the amount of $62,500.00 in favor of the lien holder with any company of his choice ...." Appellees purchased a home owner's policy, with "inflation guard" from the Standard Fire Insurance Company.[2]

Though Robert Rylee had quitclaimed the property to appellant at the time the warranty deed was signed, he was still married to her so he and his wife signed the warranty deed. This deed stipulated that the property was appellant's separate property and estate.

The deed of trust provided in pertinent part:

---

1. The DTPA is found in Tex.Bus. & Com.Code Ann. § 17.41, et seq.

2. This type of policy was intended to protect the parties against continuing increase in the cost of construction in case of destruction. However, it appears that even then the increase in cost of construction exceeded the terms of the policy.

"It is agreed and stipulated that the parties of the first part herein (appellees) shall and will at their own proper cost and expense, keep the property and premises herein described ... in good repair and condition, ... and shall keep. said property fully insured in some company or companies approved by the holder of said indebtedness, to whom the loss, if any, shall be payable and by whom the policies shall be kept."

During the next twelve years, the appellees timely made their monthly mortgage payments. On July 21, 1979, a fire severely damaged the house. At that time, $57,-187.26 was owed on the house. However, the burnt house and the lot were worth more than the unpaid balance. The fire was a covered peril under the policy and appellees contacted the insurance company and the original builder. Shortly thereafter, since the damage to the house exceeded the policy limits, appellees received a check made payable to appellant and appellees for the policy limits which were at that time $110,000.00.

On August 1, 1979, appellees called appellant and told her that they had contacted the original builder and that he was able and ready to rebuild the house. They told her about the check. Appellees offered to put the money in an escrow account and pay the builder out of the account, but appellant replied that this was not necessary and that if they would mail her the check, she would "be happy to sign it" and return it to them.[3]

Approximately two weeks passed and appellees did not hear from appellant. During this time, appellant contacted her ex-husband for advice. Because of the dramatic increase in interest rates and the wording of the deed of trust, he advised her not to sign the check and to insist that the unpaid balance on the note be paid off in full.

On August 16, 1981, appellees received a copy of the letter which appellant wrote the insurance company in which she refused to endorse the check and demanded that she be sent a check for the outstanding balance on her note. Appellees called appellant and asked her about the matter. Appellant advised appellees to talk to her ex-husband who was authorized to speak for her. Appellees called Rylee and told him that the builder had started reconstruction but that they could not continue without the insurance money. They also told him that conventional financing was not available and that they needed the money for the repairs. Rylee said that he was sorry about the house, but that when they bought the house it was a good deal for them and that now it was a good deal for appellant. He also said that appellant had a right to full payment based on his interpretation of the deed of trust.

Because of the dispute, on January, 1980, the insurance company paid the funds into the registry of the court and filed an interpleader suit, joining appellant and appellees as defendants. In September, 1980, the money was released to appellees after they posted a bond. This suit followed and the parties were realigned for trial with the appellees as plaintiffs and appellant as defendant.

The jury found: 1) that appellant refused to endorse the check after first having agreed to sign it; 2) that appellant breached an implied warranty of good faith and fair dealing; 3) that appellant was not entitled under the deed of trust to accelerate the debt; 4) that appellant represented to appellees that the deed of trust, promissory note and/or the insurance policy conferred or involved rights or obligations which she did not have or which were prohibited by law; 5) that appellant's promise to endorse the check was supported by consideration.

For each of these issues, the jury found that they were a proximate cause of dam-

---

**3.** This same procedure had been done before by the parties. In 1970, Hurricane Celia damaged the house. The insurance company issued a check for $10,000.00 which was made payable to the mortgagor and mortgagee. Appellant-mortgagee endorsed the check and returned it to appellees-mortgagors.

ages to appellees in the amount of $127,616.00.

Following the trial, appellees received a $71,359.36 judgment over and above the $110,000.00 previously released to them. This amount is part of the $127,616.00 in damages found by the jury less a $56,256.44 credit for the unpaid balance of the note. Regarding this unpaid balance, the trial court entered a judgment in this amount in appellant's favor against the principal and sureties on the bond. The trial court also awarded the appellees attorney's fees but denied their claims for treble damages under the DTPA and for pre-judgment interest. Both sides have appealed.

Appellant, in no evidence and insufficient evidence points of error argue that there is no liability to appellees because:

1. Appellant had no duty to sign the check;

2. There is no consideration for appellant's promise to sign the check;

3. They had a right to accelerate the note because the home was not fully insured;

4. There is no evidence or insufficient evidence to support the damage issue; and

5. Appellees do not have a cause of action under the DTPA because they were not consumers under the act and the alleged deceptive act was not a producing cause of the damages.

On the other hand, appellees allege that the court erred:

1) In denying treble damages under the DTPA;

2) In refusing to grant pre-judgment interest; and

3) In allowing appellant a credit for the unpaid balance on the note by way of a judgment for appellant against the principal and sureties on the bond.

The main issues, then, are whether appellant had a right to accelerate the note, whether appellant had a duty to sign the check, and whether the appellees are entitled to relief under the DTPA. We will first consider whether appellant had a right to accelerate the note.

## RIGHT TO ACCELERATE THE NOTE

In cross-points of error one through four, appellees contend that the trial court committed error in granting judgment to appellant for the unpaid balance of the note and in entering judgment against the principal and sureties of the bond because they were not parties to the suit and there was no pleadings or proof to support a judgment against the principal and sureties.

It is undisputed that the cost to rebuild the house is greater than the amount of the insurance policy. Because of this fact, appellant contends that the house was not "fully insured" as required by the deed of trust and, therefore, appellees were in default thereby giving appellant the right to accelerate the note. First of all, if appellee had been in default, appellant's remedy under the deed of trust would have been for a foreclosure sale. Appellant did not exercise this option. She merely refused to sign the check and demanded full payment of the unpaid balance of the note.

The real estate contract obligated appellees to carry fire and extended coverage on the property *in the amount of $62,500.00* in favor of the lien holder (appellant). The deed of trust also provided that appellees shall keep the property fully insured and that the loss, if any, be payable to appellant. If two or more written instruments make up a single transaction, all of them must be construed together to ascertain and give effect, whenever possible, to the real intention of the parties. *Pacific Mutual Life Insurance Co. v. Westglen Park, Inc.*, 160 Tex. 1, 325 S.W.2d 113 (Tex. 1959); *Donie State Bank v. Parker*, 554 S.W.2d 858 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). Generally, a mortgage of real property is not a common law conveyance on condition but merely a security for a debt, the legal estate existing only for that purpose. *Carroll v. Edmondson*, 41 S.W.2d 64 (Tex.Comm'n App.1931). Where there is injury to the security, the measure of damages is not based upon the injury to the mortgaged premises but upon the loss, if

any, incurred by the holder of the lien occasioned by the injury to his security. *Carroll v. Edmondson, Id.* 65. See also, 55 Am. Jur.2d *Mortgages* §§ 282 and 283.

■ Generally, hazard insurance provides a fund in which the mortgagor and the mortgagee have a common interest for the accomplishment of a common purpose. The insurance is not intended to provide a fund with which to pay the debt, but to furnish protection to both the mortgagor and the mortgagee. In case of injury to the security, absent a specific provision or agreement to the contrary, the object of the insurance is to provide the mortgagor a fund to enable him to rebuild and to provide the mortgagee additional security to restore the security to the status quo in order to provide sufficient value to secure the debt. *Naquin v. Texas Savings & Real Estate Invest. Assn.,* 95 Tex. 313, 67 S.W. 85 (Tex.1902); *Schultz v. Morton,* 101 S.W.2d 373 (Tex.Civ. App.—Dallas 1936, writ ref'd).

■ Reading the documents together, we are of the opinion that in 1967, when the parties entered into this transaction, it was their intent to provide appellant additional security to the extent of the debt and to provide appellees a fund to repair or rebuild the house in case of damage.

■ In our case, as in *Carroll,* the value of the property even after the fire was sufficient to secure the debt. Therefore, the house was "fully insured" as contemplated by the parties and appellees were not in default. Since appellees were not in default, the trial court committed error when it offset the amount of the unpaid balance of the note against the judgment and when it ordered that appellants recover on the bond posted by Jerry Fischer as principal and James R. Harris and L.M. Fischer as sureties. There were no pleadings alleging that the principal and sureties had breached their bond. Therefore, there is no basis (pleadings and proof) to support a judgment against the principal and sureties on the bond. *Williams v. Warren,* 82 Tex. 319, 18 S.W. 560 (Tex.1891). Appellees' cross-points one through four are sus-

tained. See: *Huey v. Ewell,* 22 Tex.Civ. App. 638, 55 S.W. 606 (Tex.Civ.App.—Dallas 1900, no writ); *Zidell v. John Hancock Mut. Life Ins. Co.,* 539 S.W.2d 162 (Tex.Civ. App.—Dallas, 1976), 91 A.L.R. 1354 Annot.

## DUTY TO SIGN THE CHECK

■ Although we have been unable to find any Texas cases directly in point, we believe that the trial court was correct in submitting the case to the jury under the theory of duty of good faith and fair dealing.

"SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that Sarah Jane (Rylee) English, by refusing to endorse the insurance check (P–X15) over to the Fischers, breached the implied warranty of good faith and fair dealing as hereinafter defined?

You are instructed that the 'implied warranty' of good faith and fair dealing', as used herein, requires that the mortgagee cooperate with the mortgagor so that any insurance funds would be used not to serve the sole interest of the mortgagee, but be used for the best interests of both the mortgagee and the mortgagor.

Answer 'We do' or 'We do not'.

Answer: We do' "

The "Restatement of the Law" (Second) *Contracts* § 205, "Duty of Good Faith and Fair Dealing" provides: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." In the comment section the following is found:

"The phrase 'good faith' is used in a variety of contexts, and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." Restatement Second, § 205, Comment (a) (1981).

17A C.J.S. (1981) *Contracts,* § 328 (1963) reads as follows:

"Moreover, in every contract there exists an implied covenant of good faith and fair dealing; and, more specifically, under such rule, the law will imply an agreement to refrain from doing anything which will destroy or injure the other party's right to receive the fruits of the contract. Any matters which may be expressly agreed may also be implied. However, generally, implied convenants are not favored in the law. Hence, in order that an unexpressed term may be implied, the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties; that is, it must appear that the implied obligation was so clearly within the contemplation of the parties that they deemed it unnecessary to expressly stipulate with reference thereto, or it must appear that it is necessary to infer such an obligation to effectuate the full purpose of the contract; and a promise or term can be implied only where it can be rightfully assumed that it would have been added if the attention of the parties had been directed to it or that it was deemed unnecessary to expressly state it."

See also 17 Am.Jur.2d Contracts § 256.

It is apparent to us that the parties intended that the purchase price would be paid in the ordinary course of events to the end that appellant could enjoy full use of the house subject to the required monthly payments under the particular contract as evidenced by the real estate contract and deed of trust. As previously noted, it is also apparent that the parties intended to provide appellant additional security to the extent of the debt with the insurance policy. Since the security was not impaired by the fire and appellees were not in default, the appellant had the duty to sign the check to allow the insurance proceeds to be used for the repairs.

This case is very similar to the case of *Schoolcraft v. Ross,* (1978) 81 Cal.App.3d 75, 146 Cal.Rptr. 57. In that case, Schoolcraft, (mortgagor) purchased a home from Ross (mortgagee) and executed a promissory note secured by a deed of trust naming her as beneficiary of the policy. The purchase price was $14,500.00 and the terms of the note required Schoolcraft to make monthly payments. The house was destroyed by fire and at that time $13,585.01 was owed on the house.

The deed of trust provided that the beneficiary (the mortgagee) could, at her option, apply the proceeds to pay off the debt *or* turn over the funds to the mortgagor.

After the fire, the mortgagor decided to rebuild the house but the mortgagee invoked the clause that allowed her to reclaim the proceeds to pay off the debt. The mortgagor sued the mortgagee for damages. The trial court held that the deed of trust was subject to an implied covenant requiring good faith and fair dealing on the part of the mortgagee and that the mortgagee breached that implied convenant and awarded damages to mortgagor. The appellate court acknowledged that in every contract there is an implied convenant of good faith and fair dealing that neither party would do anything which injures the right of the other to receive the benefits of the agreement and affirmed. Citing an earlier case, *Milstein v. Security Pac. National Bank,* (1972) 27 Cal.App.3d 482, 103 Cal.Rptr. 16, the court said:

"As Milstein points out, the purpose of the deed of trust is that the borrower will have the use of funds loaned on specific terms and the lender will have the right to a specific repayment that is secured by the deed of trust (citation omitted). The lender does not have the right to unilaterally cut off the borrower's right to use the loan funds unless he can show that his security is impaired.

Here there is no evidence that the security was impaired by the fire nor is there any evidence that plaintiffs were unwilling or unable to continue making payments on the property. The sole reason advanced for defendant Ross' conduct was that she was old and sick and needed

the money immediately to take care of her medical needs.

\* \* \* \* \* \*

As in Milstein, the two clauses in the deed of trust must be construed to avoid the unintended acceleration of the note. The parties intended that the purchase price would be paid in the ordinary course of events to the end that plaintiffs could enjoy the full use of the house, subject to their required monthly payments. Forcing the buyer to pay off in advance would result in a buyer losing certain property rights contemplated by the parties, among them the benefit of a long-term loan which permits the buyer to spread the purchase price of the property over a long time."

We find that the evidence is sufficient to support the jury's answer to Special Issue No. 4. Appellant's points of error two, three and four are overruled. We now turn to the damages issue based on this breach of warranty.

## DAMAGES

Appellant directs a number of points of error at the issue of damages. The dissatisfaction stems from the trial court's submission of and interpretation of Special Issue Number 10, which reads as follows:

"What sum of money do you find from a preponderance of the evidence would compensate the Fischers for their damages, if any, incurred prior to September 13, 1980, the date the $110,000.00 was released to the Fischers?

You are instructed that in determining the amount of damages, if any, you are not to consider the inconvenience or mental suffering, if any suffered by the Fischers.

You are further instructed in arriving at your answer that after the fire the Plaintiffs, Jerry Fischer and Alice Ann Fischer, had a duty to take all steps reasonably available to them to prevent or mitigate their damages, and you are not to include any sum for damages, if any, of Jerry Fischer and wife Alice Ann Fischer to take steps that a rea-sonably prudent person in the exercise of ordinary care under the same or similar circumstances would have taken to mitigate their damages.

Answer in dollars and cents, if any.

Answer: $127,616/xx"

■ Appellant complains that submission of Special Issue Number 10 was error because it allowed the jury to improperly consider and award consequential damages. Appellant contends the appellees' cause of action is "merely an action to collect damages for the non-payment of money." According to appellant, the only measure of damages is the amount of the money owed, plus interest. Citing *F.B. Collins Invest. Co. v. Sallas,* 260 S.W. 261 (Tex.Civ.App.—Texarkana 1924, writ ref'd). We disagree. The cause of action here is for breach of an implied warranty of good faith and fair dealing. In such a case, the consequences of the breach, if reasonably foreseeable, are a proper element of damages. *Atchison Topeka & Santa Fe Ry. Co. v. Butler,* 127 Tex. 154, 93 S.W.2d 143 (Tex.1936); *F.B. Collins Invest. Co. v. Sallas, supra.*

■ As already noted above, Texas courts, in construing real estate sales contracts and mortgages, have recognized generally the purpose of hazard insurance. *Naquin v. Texas Savings & Real Estate Invest. Assn., supra.; Schultz v. Morton, supra.* As set out above, the parties to the present lawsuit intended, through their provisions for insurance in their sale contract and deed of trust, to provide a special fund to protect both of their interests in the property. By contracting for insurance, the parties demonstrated their recognition of the danger that hazards, like fire, pose to mortgagors and mortgagees alike. Necessarily included in this danger are two elements of damages: 1) the difficulty to obtain the necessary funds for reconstruction of property already burdened by a first lien mortgage, and 2) the peril to the remaining structure attendant to delay in making the necessary repairs. Appellant cannot be heard to complain that she cannot be charged with knowledge of the effects of

inflation as that was, in effect, one of the reasons she refused to sign the insurance company check. The impact of inflation on costs is such common knowledge that our courts have taken judicial notice of the fact for years. E.g. *White v. White,* 503 S.W.2d 401 (Tex.Civ.App.—Amarillo 1973, no writ); *Angel v. Todd,* 368 S.W.2d 224 (Tex.Civ. App.—Houston 1963, no writ). Under the circumstances of this case, it was not improper for the jury to award as damages the difference between the cost of reconstruction at the time the insurance funds should have been made available and such cost at the time the money was actually obtained by appellees.

Appellant's next argument is that the trial court misinterpreted the jury's answer to Special Issue No. 10. Appellant's interpretation would entitle the appellees to a judgment for only $17,616.00, in addition to the right to the insurance proceeds, instead of the $127,616.00 (less the offset) awarded by the court. This argument is based on the conclusion that any damages inquired about in Special Issue 10 must include the amount of insurance money withheld ($110,000).

Examining the issue in the context of the whole jury charge and all the evidence in the record, we conclude that Special Issue 10 inquired only as to consequential damages and that the jury's answer was correctly interpreted by the trial court. It was undisputed that the cost of restoration exceeded the insurance policy limits, both at the time the insurance company issued the check and the date the appellees finally obtained the funds. Therefore, the amount of increase in the cost of reconstruction between the two critical dates represented the added cost to appellees caused by the unwarranted delay by appellant.

Appellees called two witnesses to testify as to the damages. Donald Green, an architect, testified that he made a detail study of "comparables" in the area. After studying the critical dates, he testified that the replacement cost in September of 1980 would be $367,371.00. Green was not asked about the cost of repair in July, 1979.

Bill Shaw, a builder, testified that his estimate of the cost of repairs in July, 1979 was $174,052.00. Because the house was left open to the weather (the roof had been burned off) for over a year, this caused many of the salvageable items (walls, interior walls and paneling) to become deteriorated and mildewed. This fact plus the increase cost of construction caused an increase in the cost of repairs which in September of 1980, according to Shaw was $301,668.00. It can be demonstrated that the jury considered the latter evidence in answering this damages issue.

$301,668.00 – Sept., 1980 cost (Shaw's testimony)
– 174,052.00 – July, 1979 cost  ”  ”
$127,616.00 – Jury answer

Appellant still would maintain that reversal is required even assuming the accuracy of the above analysis because the evidence is legally or factually insufficient to show that the costs of repair testified to were reasonable. Appellant argues that because the damages are based on cost of repair, it is fair to require that the costs relied upon be shown to be reasonable and necessary. Citing *Stafford v. Thornton,* 420 S.W.2d 153, 160 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.); *Holt v. Purviance,* 347 S.W.2d 321 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). "Necessary" means that which is required to return the premises to the condition they were in before the damage occurred. "Reasonableness" refers to the relation of the charges quoted to those of others in the community engaged in like or similar work of the same or similar quality at the time.

Both Green and Shaw testified to the effect that their estimates were calculated to restore the appellees' home to its condition before the fire. Evidence of the reasonableness of the estimates exists in the witness' testimony as to their experience and reputation in the community, the comparison of the costs to that of other similar projects and Shaw's testimony to the effect that his estimate was done in the same manner as others in his business. Considering the whole record in this case, there was sufficient evidence of reasonableness and

necessity as found by the jury. We find no magic in the words themselves in this type of case. It was not necessary that the witnesses state directly that their charges were "reasonable." Appellant's points of error six, seven, nine, ten, eleven and twelve are overruled.

## DTPA

In the fifth cross-point, appellees contend that the court erred in not trebling the damages under the DTPA pursuant to an affirmative answer in Special Issue No. 7. That issue is as follows:

"SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Sarah Jane (Rylee) English or her representative, by their acts, conduct or silence, represented to Jerry Fischer that the Deed of Trust (P–X) and/or Note (P–X 27) and/or Insurance Policy (D–X 3) conferred or involved rights, remedies or obligations which it did not have or involve or which were prohibited by law?

Answer 'We do' or 'We do not'.

Answer: We do' "

This issue tracts 17.46(b)(12) of the act.

To maintain a private cause of action for treble damages under § 17.50 of the act, a person must qualify as a "consumer" as that term is defined in the act. *Riverside National Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). Section 17.45(4) defines "consumer" as an "individual, partnership or corporation or governmental entity who seeks or acquires by purchase or lease any goods or services."

In *Cameron v. Terrell Garrnett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981), the court stated:

"We have also recognized at least two requirements that must be established for a person to qualify as a consumer under the DTPA. One requirement is that the person must have sought or acquired goods or services by purchase or lease ... Another requirement ... is that the goods or services purchased or leased must form the basis of the complaint ... If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress."

In our case, appellees do not satisfy either requirement. The house was purchased in 1967 and appellees are complaining of a 1979 alleged misrepresentation made by appellant that the deed of trust authorized the acceleration of the note. There is no complaint that in any way relates to the sale of the house in 1967. Therefore, the complaint does not involve "goods" or "services" and, the "goods" or "services" purchased do not form the basis of appellees' complaint. Therefore, appellees do not qualify as consumers. Also, there is no evidence that the false, misleading or deceptive act or practice was a producing cause of actual damages as required by § 17.50 of the act. Appellees' fifth cross-point is overruled. The portion of the judgment denying appellees relief under the DTPA is affirmed.

## ATTORNEY'S FEES

In the eighth point of error, appellant asserts that it was error to award attorney's fees under the DTPA or Art. 2226.

The DTPA allows attorney's fees *"reasonable in relation to the amount of work expended."* Tex.Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon Supp.1982). Special Issue 11 incorporated this language.

The proper submission under Art. 2226 is an issue inquiring as to *"reasonable attorney's fees."* Appellant asserts that since there was no submission of the attorney's fee as such under Art. 2226 and since appellee is not entitled to relief under the DTPA, an award of attorney's fees was improper.

Appellant is correct in stating that absent a judgment for actual damages, the award of attorney's fees under the DTPA cannot stand. *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Harrison v. Dallas Court Reporting College, Inc.* 589 S.W.2d 813, 817 (Tex.Civ.App.—Dallas 1979, no writ).

However, the submission of the issue to the jury under the DTPA by the trial court is even more restrictive than that under Art. 2226. We hold that the issue on attorney's fees submitted, supports an award of attorney's fees under Art. 2226. Appellant's eighth point of error is overruled. Tex.R. Civ.P., Rule 434.

## PRE–JUDGMENT INTEREST

In appellees' sixth cross-point error, they allege that the trial court erred in not awarding pre-judgment interest to appellees.

It is well settled that where damages are established as of a definite time and the amount thereof definitely determinable, by written instrument or known standards of value, interest is recoverable as a matter of right from the date of injury. *Imperial Sugar Co., Inc. v. Torrans,* 604 S.W.2d 73 (Tex.1980); *Black Lake Pipe Line Co. v. Union Construction Co., Inc.,* 538 S.W.2d 80 (Tex.1976). *Ambox, Inc. v. Stewart & Stevenson Services, Inc.,* 518 S.W.2d 428 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). The test is whether the measure of the recovery or claim (and not necessarily the amount) is fixed by conditions existing at the time the claim arose or the injury was inflicted. *Metal Structures Corporation v. Plains Textiles, Inc.,* 470 S.W.2d 93 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.).

In this case, the amount of damages were not definitely fixed or determinable at any particular time. Appellees' sixth cross-point is overruled.

The portion of the judgment that allowed an offset in the amount of the unpaid balance of the promissory note ($56,256.44) against the full amount of the judgment ($127,616.00) and which allowed the appellant to recover on the bond posted by appellees is here reversed and judgment is here rendered, restoring the full amount of damages in the amount of $127,616.00. The remainder of the judgment is affirmed.

AFFIRMED in part; REVERSED and RENDERED in part.