DRIVER PIPELINE COMPANY,
INC., Appellant,

v.

MUSTANG PIPELINE COMPANY,
INC., Appellee.

No. 06–00–00053–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 24, 2001.

Decided Feb. 13, 2002.

780

Joe F. Canterbury Jr., David G. Surratt, Canterbury, Stuber, Elder, Gooch & Surratt, PC, Dallas, John R. Mercy, Mercy, Carter & Elliott, LLP, Texarkana, for appellant.

David J. Bush, Thomas H. Buchanan, Ken W. Good, Buchanan Kent, PC, Tyler, for Mustang Pipeline Co.

Clifton L. "Scrappy" Holmes, Holmes Law Office, PC, Longview, for Seaboard Surety Co.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

This is an appeal by Driver Pipeline Company, Inc. (Driver) and Mustang Pipeline Company, Inc. (Mustang) from a judgment in a lawsuit for breach of contract. Seaboard Surety Company, the insurer that provided a performance bond for Driver, is before this court as a cross-appellee.

Mustang wanted to build a gas pipeline from Longview to Diboll to Mount Belview (near Houston), a 200–mile stretch of pipeline. Mustang divided the work into the north spread and the south spread, each 100 miles long. After going through a bidding process, Mustang hired Driver to dig the trenches and lay the pipe for the north 100 miles of pipeline. Because Mustang wanted to finish the pipeline by a specific deadline, it prepared a contract stating that the prices were based on eleven hours per day and seven days a week to meet a fourteen-week schedule (ninety-eight construction days), and specifying that the final completion of the pipeline within that time was of "great importance to the Company."[1]

And then the rains came. At the end of fifty-eight days, Driver had finished only fifteen miles of the pipeline and had laid off some of its crews and suspended operations. Driver proposed that Mustang give it additional time and money to finish the project. Driver took the position that rain delayed its work and that all parties understood that his bid was based on no weather delays. The owner of the company, James Driver, testified by deposition that his bid took into account a fifteen percent contingency for rain days. At trial, however, Driver testified that this was a "best-time" contract with no rain days included and that he relied on a clause allowing (but not requiring) Mustang to give them extra time in the event of weather delays. There is evidence that the builder of the south portion of the line sought and received a thirty-day extension on its construction.

The contract does contain provisions explaining how the crews and welds were to

1. The contract also contains a "force majeure" clause suspending the duties of the parties if performance was prevented by an act of God, but concluding that "[i]t is specifically agreed and understood, however, that notwithstanding this Article or any other Article hereof, Company [Mustang] shall have the right to immediately terminate this Contract if the Contractor is, or may be, rendered unable to perform hereunder for any reason." Mustang did not seek to terminate the contract under the language of this clause, but instead did so under the clause permitting termination for cause.

be protected when working in the rain, which suggests that they expected Driver to work through at least some inclement weather rather than shutting down. Also, Driver was several days late in starting work and could have started earlier. The reasons are disputed.

When the rains came, there was testimony that Driver kept part of its crews working, but refused to move any operations to drier areas of the line to continue work. Driver offered testimony that such a move would have been a useless act because the entire length of the proposed pipeline was soaked. The evidence also shows that the rain in that time period of 1997 was above average, but within the five-year range for the area.

After several meetings, at which Driver's representatives and owner demanded more time and money because the pipeline could not be finished under the conditions of the contract, Mustang declared a breach.

Mustang had already been testing the waters with other construction companies, and after declaring a breach, it hired one of the original bidders, Sunland Construction. Mustang requested that Sunland finish as close to the original schedule as possible. Sunland hired a second crew, moved in, worked through the mud, and completed the remaining eighty-five miles of pipeline within eleven weeks.

Mustang sued Driver for breach of contract, seeking costs to complete the project, lost profits, and attorney's fees.

Driver countersued for wrongful termination, seeking damages for termination, lost profits, and attorney's fees.

Mustang sought damages of $4,065,286 because it cost that much more than the original contract price with Driver to complete the pipeline.[2]

## The Verdict

At the conclusion of an eight-day trial, the jury made the following findings:

- Driver failed to comply with the contract;
- Mustang was not justified in terminating its contract with Driver;
- $2,104,601 would compensate Mustang for damages caused by Driver's failure to comply with the contract; and
- $2,515,958 would compensate Driver for damages caused by Mustang's unjustified failure to comply with the contract.[3]

## The Trial Court's Judgment Notwithstanding the Verdict

The trial court found that the verdict was for Driver and that there was "no evidence of probative force to sustain the jury's finding with respect to question No. 3" [the damages question for Mustang]. The court then rendered judgment in favor of Driver and Seaboard Surety against Mustang. The court awarded Driver actual damages of $3,146,728.33, plus attorney's fees, appellate attorney's fees, and ten-percent interest on the judgment.

2. Specifically, Mustang provided evidence in chart form that it cost

| | | |
|---|---|---|
| | $14,216,255 | Total costs to complete the north spread |
| less | $10,742,765 | Total Driver contract amount |
| | $ 3,473,490 | |
| plus | $ 642,957 | Lost net profits due to delay in completion |
| less | $ 51,161 | Agreed payment to Driver for mats, flumes, and skids |

$ 4,065,286 TOTAL CLAIM

3. Mustang pointed out in a post-submission brief that language in the damage issue of the jury charge allowed the jury to award Driver a recovery for lost profits. Mustang did not, however, raise a point of error regarding the jury's finding on this issue on appeal.

### Driver's Appeal

Driver filed the first Notice of Appeal and is labeled as the appellant. Driver contends that the trial court erred by not granting its motion to impose a statutory mineral lien in support of its victory in the trial court.

■ This issue has not been adequately preserved for review. When brought to the trial court's attention, the trial court stated that it would not grant the motion at that time, but that it would be willing to consider it later if Driver so desired. No further mention of the motion was made, and the trial court never denied the request. In such a situation, we cannot conclude that the trial court committed error.

■ Further, the stated purpose for the relief was to enforce the judgment. Since that time, Mustang has filed a supersedeas bond that is sufficient to cover the entirety of the judgment against it. Even if the court had denied the lien, and even if that were error, any right to recover on the judgment is now protected by the bond, and imposition of such a lien at this point would be duplicitous and improper. Driver is not entitled to have its right to recover on the judgment protected twice.

### The Appeal by Mustang

Cross–Appellant Mustang raises five issues in which it contends that the trial court erred by disregarding the jury's answer to its damage issue; that because the jury found that Driver was in breach, the court erred by refusing to disregard the jury's answer finding that it had wrongfully terminated Driver; and that there was legally and factually insufficient evidence to support the finding of wrongful termination. If we find in Mustang's favor on these points, we would then reach its further contentions that attorney's fees were improperly assessed and that the court

should also have entered judgment against Seaboard Surety.

### Judgment Notwithstanding the Verdict—Standard of Review

■ We will affirm a judgment notwithstanding the verdict (j.n.o.v.) if there is no evidence to support an issue, or conversely, if the evidence establishes an issue as a matter of law. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987). "No evidence" exists, and a j.n.o.v. should be rendered, when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990). To determine whether there is any evidence, we must review the record in the light most favorable to the verdict, considering only the evidence and inferences that support the verdict and rejecting the evidence and inferences contrary to the verdict. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). When there is more than a scintilla of competent evidence to support the jury's findings, the j.n.o.v. should be reversed. *See id.* at 228. If we decide that the j.n.o.v. was erroneous, we must reverse and render judgment in harmony with the verdict, unless the appellee has presented a cross-point sufficient to vitiate the jury's verdict. *Cain v. Pruett,* 938 S.W.2d 152, 160 (Tex.App.—Dallas 1996, no writ).

### The Damages Issue

■ Mustang first contends that the j.n.o.v. was improperly granted because the court erred in deciding that there was no evidence to support the amount of the

damage award.[4] Mustang then argues that "Driver has waived this issue" because it did not object to evidence from Mustang's witnesses.[5] The contention of error and this argument do not mesh. The issue of whether the evidence presented to the jury is legally sufficient is not dependent on whether Driver timely objected to testimony—it is dependent on whether that testimony supports the verdict.

■ The issue is whether there was some evidence of damages to support the jury's verdict. There is substantial evidence of the amount that it cost Mustang to complete the pipeline. The jury charge contained language limiting any recovery to "[t]he reasonable and necessary costs incurred by Mustang Pipeline Company to complete the pipeline less the amount agreed to between Mustang ... and ... Driver ... to construct the pipeline." The position taken by Driver and accepted by the trial court is that this evidence was legally insufficient because there was no evidence before the jury to show that the amount that was admittedly paid was "reasonable and necessary" to complete the work.

■ Mustang directs this court to substantial evidence about the extent of damages. It does not direct this court to any evidence from any source to suggest that the actual expenditures that it made were reasonable or necessary—merely that those were the amounts expended in completing the pipeline. Mustang argues correctly that it is not necessary for the witnesses to repeat the magic words "reasonable and necessary" in order to provide evidence that expenses are in fact "reasonable and necessary." As long as the evidence sufficiently shows that the expenses were reasonable and necessary, it is not required that particular "magic

---

4. Mustang states in its brief that the trial court found evidence to support a breach of contract but disregarded the damages because there was no evidence to support that award. The judgment does not state that the court found evidence to support a breach of contract. The judgment does explicitly state that the court found there was no evidence of probative force to support the damage award and then granted the j.n.o.v. Mustang has also argued the record of the hearing demonstrates the trial court was granting the motion to disregard only as to the question on damages. We agree with Mustang the j.n.o.v. specifies it was granted on damages. This is not equivalent, however, to a statement in the j.n.o.v. that the court found evidence to support a breach of contract. We are bound by the judgment, and that judgment is the document under review by this court. Courts may not import reasoning or discussions from the trial into the final, written judgment to alter or amend its language.

5. Mustang's waiver argument is based in part on our opinion in *Dougherty v. Gifford*, 826 S.W.2d 668, 680 (Tex.App.—Texarkana 1992, no writ). In that opinion, we stated:

Dougherty argues that there was no evidence that the past medical expenses were necessary and reasonable, and an award including these amounts is impermissibly speculative. *See Roth v. Law*, 579 S.W.2d 949, 956 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Dougherty and Molina made no objection to the evidence of past medical expenses on this or any other ground. Indeed, their counsel expressly stated that he had no objection to such evidence. Any error in this respect was waived.

Although our phrasing of this conclusion could have been clearer, the surrounding language shows that we first overruled a contention that evidence was improperly admitted, in part because there was no timely objection on that basis, and then concluded that the properly admitted evidence was sufficient to support the verdict. This case does not suggest that if a party fails to complain about the admission of evidence, that party has waived his right to complain that the evidence admitted was insufficient to support the verdict.

words" be used by the witnesses.[6]

 Damages for breach of contract are the contract price, less the cost of completion. *Sage Street Assocs. v. Northdale Constr. Co.*, 937 S.W.2d 425, 426 (Tex. 1996). As applied in construction cases, the general rule is that the correct measure of damages resulting from the breach of a building contract is the reasonable cost of remedying the defects which constitute the breach. *Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377 (1956); *Warner v. Irving Lumber Co.*, 584 S.W.2d 893, 896 (Tex.Civ.App.—Dallas 1979, no writ); *County of Tarrant v. Butcher & Sweeney Constr. Co.*, 443 S.W.2d 302 (Tex.Civ.App.—Eastland 1969, writ ref'd n.r.e.); *Cooper Concrete Co. v. Hendricks*, 386 S.W.2d 221 (Tex.Civ.App.—Dallas 1965, no writ). However, the fact of payment, standing alone, is no evidence that expenses were reasonable and necessary. *Ashley v. Bizzell*, 694 S.W.2d 349, 354 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Truck Farm, Inc. v. Allen*, 608 S.W.2d 296, 297 (Tex.Civ. App.—Dallas 1980, no writ).

 Similarly, in the analogous area of repairs (rather than new construction), a party seeking recovery for the cost of repairs must prove their reasonable value. *See, e.g., Ebby Halliday Real Estate, Inc. v. Murnan*, 916 S.W.2d 585, 589 (Tex. App.—Fort Worth 1996, writ denied); *GATX Tank Erection Corp. v. Tesoro Petroleum Corp.*, 693 S.W.2d 617, 619 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (stating "[i]t is incumbent upon the parties seeking recovery for the cost of repairs to prove the reasonable value of such repairs"). Ordinarily, to establish the right to recover costs of repairs, it is not necessary for a claimant to use the words "reasonable" and "necessary"; a claimant need only present sufficient evidence to justify a jury's finding that the costs were reasonable and the repairs necessary. *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 763 (Tex.App.—Fort Worth 1998, no pet.); *see Murnan*, 916 S.W.2d at 589; *Ron Craft Chevrolet, Inc. v. Davis*, 836 S.W.2d 672, 677 (Tex.App.— El Paso 1992, writ denied). However, mere proof of amounts charged or paid does not raise an issue of reasonableness, and such amounts ordinarily cannot be recovered without evidence showing the charges were reasonable. *Fort Worth Hotel Ltd. P'ship*, 977 S.W.2d at 762–63; *see Murnan*, 916 S.W.2d at 589; *GATX Tank Erection Corp.*, 693 S.W.2d at 620; *Bradley v. Castro*, 591 S.W.2d 304, 306 (Tex. Civ.App.—Fort Worth 1979, no writ); *Frost Nat'l Bank of San Antonio v. Kayton*, 526 S.W.2d 654, 666–67 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.); *Allright, Inc. v. Lowe*, 500 S.W.2d 190, 191 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ).

These cases hold that a plaintiff cannot recover damages just by proving how much it spent. It must also provide evidence that the amount spent was reasonable and necessary. *But see Liptak v. Pensabene*, 736 S.W.2d 953, 958 (Tex. App.—Tyler 1987, no writ) (holding that the testimonies of three qualified expert witnesses about the damages done to a house by termites, and their opinions as to

---

**6.** A plaintiff must present sufficient evidence to justify the jury's finding that the costs of repair or replacement were reasonable and necessary. *Ron Craft Chevrolet, Inc. v. Davis*, 836 S.W.2d 672, 677 (Tex.App.—El Paso 1992, writ denied). "Reasonable" and "necessary" are not "magic words" that a witness must incant. *Merchants Fast Motor Lines, Inc. v. State*, 917 S.W.2d 518, 523 (Tex.App.— Waco 1996, writ denied); *Ron Craft Chevrolet, Inc.*, 836 S.W.2d at 677; *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 694 (Tex. App.—Austin 1989, no writ).

what the repairs would cost, was some evidence that the cost of repairs was "reasonable and necessary," although those words were not used in their testimonies) (citing *English v. Fischer*, 649 S.W.2d 83, 91–92 (Tex.App.—Corpus Christi 1982), *rev'd on other grounds*, 660 S.W.2d 521 (Tex.1983)).

Mustang makes no effort to direct this court to any testimony that would tend to show that the amount paid was reasonable or necessary.[7] It did attempt to introduce such evidence by a rebuttal witness. The trial court refused to permit the testimony—because there was nothing for it to rebut. Driver did not call its own expert (in fact, at the discussion about Mustang's rebuttal witness, counsel stated that he had called his expert and told him to turn around and go home because he would not be needed), who would have testified about the unreasonableness of the amounts paid, because Mustang did not provide any such evidence for him to controvert.

There is considerable evidence the amounts paid were correct under the terms of the new contract with Sunland which, as noted above, was entered into at a substantially higher pricing level than the bid Sunland had originally made in an effort to initially obtain the job. There is evidence this resulted in the expenditure by Mustang of four million dollars more than was contemplated in the original bid contract with Driver. There is testimony Mustang paid Sunland the amounts shown to be due under the terms of the new contract. There is also evidence about the terms of Sunland's original bid for the contract when it was originally let and also about the amount that the newly agreed

contractual amount was increased for the changed requirements.

That is not the same as providing evidence that the agreed on amounts charged were reasonable for the work done. What is lacking is any evidence that the contract itself and the amounts Mustang agreed to pay as set out by that contract were reasonable. The fact Mustang accepted the contract in a nonbid situation is not evidence the charges were reasonable.

The weight of authority indicates that the mere evidence of the amounts paid—without more—is no evidence that those amounts were reasonable. The necessity of completing the pipeline was shown by the evidence of the failure to complete the contract by Driver and the completion by another contractor. That does not suffice to show that the cost of the work was reasonable. Accordingly, the trial court correctly granted a j.n.o.v. on that issue.

Mustang next contends that the jury's answer to question two, that Mustang was unjustified in terminating the contract, is immaterial. Mustang argues that because the jury also found that Driver did in fact breach the contract, it was as a matter of law entitled to terminate if any breach of contract actually occurred. That was not the theory presented at trial. At trial, Mustang relied on the portion of its contract that permitted it to terminate for cause. That clause contains the operative language that was presented to the jury in the charge.

 Mustang now attempts to apply the underlying common-law question of whether it was legally entitled to terminate the contract because of the breach. A party may typically only terminate a

---

7. A representative of Sunland Construction, James Daigler, the company that completed the pipeline, testified that its original bid for the entire job was less than the amount Sun-

land charged to complete the job. He further testified that Sunland believed its original bid was reasonable.

contract when the breach of contract is found to be a material breach. A party to a contract may elect to terminate the contract and be excused from performance of any executory obligation if the other party repudiates the contract or commits a material breach. *Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 680–81 (Tex.App.—Austin 1998, no pet.); *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 20–21 (Tex.App.—Dallas 1988, writ denied); *Corso v. Carr*, 634 S.W.2d 804, 808 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).[8] The jury was not instructed on the concept of "material" breach because it was not contained within the jury question submitted by Mustang.[9]

■ We have reviewed the proposed instruction. It does not explain materiality to the fact finder in any respect, but only contains portions of the contract which Mustang contends are material clauses. This is not a submission which would assist the fact finder in determining the necessary question, which is whether any breach was material.[10] The mere provision of contractual language without explanation is insufficient to act in any re-

spect as a proposed charge on materiality.[11]

Our review is controlled by the posture of this case as an appeal from a j.n.o.v. The question is whether the trial court should have granted Mustang's motion for j.n.o.v. and disregarded the jury's answer to the question of whether its termination was justified as immaterial.

■ A trial court may disregard a jury's finding if it is immaterial. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). A question is immaterial when it should not have been submitted or when it has been rendered immaterial by other findings. *Id.; Crescendo Inv., Inc. v. Brice*, 61 S.W.3d 465, 477 (Tex.App.—San Antonio 2001, no pet. h.).

■ In order for Mustang to prevail on this point, we would have to conclude that **any** breach would suffice to justify termination of the contract. The law does not support that position, and that is precisely what this charge was designed to avoid. This is not a generic jury question, but is one that is tailored to the allegations of

---

**8.** Mustang argues that the material breach requirement is limited to situations in which a party seeks specific performance. Although several of the cases cited do involve that type of situation, they do not limit the application of that concept to that context. *See generally Cowman v. Allen Monuments, Inc.*, 500 S.W.2d 223 (Tex.Civ.App.—Texarkana 1973, no writ).

**9.** The jury question read as follows:

Did Driver Pipeline Company fail to comply with the contract it had with Mustang Pipeline Company?
Answer "Yes" or "No"
Answer: ___Yes___

**10.** The proposed instruction read as follows:

You are instructed that:
1. The contract required Driver Pipeline Company to continuously, faithfully and

diligently perform the work in order to complete the pipeline system no later than April 30, 1997.
2. The work to be performed included all work necessary to construct a high pressure pipeline system ready to be operated.
3. Driver Pipeline Company was required to furnish sufficient forces and equipment at all times to adequately perform the work with ample margin for emergencies and unexpected events, and was required to ensure completion no later than April 30, 1997. . . .

**11.** Mustang points out there are no cases setting out proper language for a materiality instruction. The Pattern Jury Charges, however, provide some direction in connection with this concept at COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 101.22 (2000).

this case and based on the terms of the contract between the parties. It clearly asks the jury to decide whether Mustang was justified in terminating the contract in accordance with specified contractual terms allowing such action. The jury found that it was not. This issue is not "immaterial," but provides the second level of determination for the fact finder. From its answer to that issue, the court could then apply contract law to the finding. Thus, the trial court did not err by applying the jury's finding, because the question was not immaterial.

■ Mustang further contends that because the jury found that Driver was in breach, jury questions two and four should have been disregarded as immaterial because it was not required to continue to perform under the terms of the contract. This again raises the question of whether Driver's breach was material. When a party materially breaches a contract, the nonbreacher may treat the contract as ended and cease performance. *Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 641 (Tex.App.—Texarkana 1995, writ dism'd); *Morgan v. Singley*, 560 S.W.2d 746, 748 (Tex.Civ.App.—Texarkana 1977, no writ).[12]

As previously stated, the jury was not asked to determine whether the actions constituting Driver's breach of contract was material, and no such question was requested by Mustang.[13] However, on appeal Mustang argues that the contract clearly sets out that "time is of the essence," and argues that this is necessarily a material breach. Based on that premise, Mustang asks this court to find that the breach found by the jury was material, and to then further conclude that Mustang was excused from further performance.

■ Whether a breach of contract is so material as to authorize the other party to repudiate the contract is a question of fact to be determined by the trier of fact, and such a determination necessarily turns on the facts of each case.[14] *Briargrove Shopping Center Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 333 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Advance Components, Inc. v. Goodstein*, 608 S.W.2d 737, 739 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Cowman v. Allen Monuments, Inc.*, 500 S.W.2d 223, 226 (Tex.Civ.App.—Texarkana 1973, no writ).

■ This is necessarily the situation in a case such as this because the question of whether a "time is of the essence" clause justifies termination of the contract is not necessarily controlled entirely by the written word. In that vein, courts have held that even where time is of the essence, a stipulated time limit may be extended either by agreement or by waiver. *Puckett*

---

12. The nonbreacher may then sue for the benefit of the bargain. *Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 641 (Tex. App.—Texarkana 1995, writ dism'd); *El Paso & S.W.R. Co. v. Eichel & Weikel*, 130 S.W. 922, 940 (Tex.Civ.App.1910, writ ref'd). When a party to the contract fails to perform his obligation, he may not thereafter enforce the remaining terms of the contract. *Atl. Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 447 (Tex.App.—Texarkana 1993, writ denied).

13. A question on material breach is an inferential rebuttal issue and thus not proper except when properly submitted as an instruc-

tion. *Weitzul Constr., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 365 (Tex.App.—Dallas 1993, writ denied).

14. Mustang cites *D.E.W., Inc. v. Depco Forms, Inc.*, 827 S.W.2d 379, 382 (Tex.App.—San Antonio 1992, no writ), for the proposition that Driver is precluded from recovering on its claim for wrongful termination due to its own breach of the preceding dependent obligation of timely performance. However, in that case there was a finding by the jury that Depco Forms had materially breached the contract.

v. Hoover, 146 Tex. 1, 202 S.W.2d 209 (1947); Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454 (1943); Laredo Hides Co. v. H. & H. Meat Prods. Co., 513 S.W.2d 210 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Such a waiver "not only may be shown by parol, but may be made to appear from the circumstances or course of dealing." Puckett, 202 S.W.2d at 212; Smith v. Hues, 540 S.W.2d 485, 488 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); see Shaver v. Schuster, 815 S.W.2d 818 (Tex.App.— Amarillo 1991, no writ).

▮▮▮ The jury was not asked whether the breach was material, and in the absence of a jury's finding, the trial court was not required to treat the breach as such as a matter of law. Therefore, the trial court did not err by overruling Mustang's motion for j.n.o.v. sought on the ground that the court should disregard jury questions two and four.

Mustang further contends that the evidence is legally and factually insufficient to support the jury's answer to question two (that it was not justified in terminating the contract).

▮▮▮ When deciding a no-evidence point, in determining whether there is no evidence of probative force to support a jury's finding, we must consider all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997). In this review, we disregard all evidence and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.1995); Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.1998).

▮▮▮ When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. Id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals is not a fact finder. Accordingly, we may not pass on the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. Maritime, 971 S.W.2d at 407.

▮▮▮ Our factual review of the evidence for sufficiency is governed by the language of the jury question and the evidence bearing on that question. Driver provided evidence that it had sixty men working on the job and pointed out repeatedly that Mustang had never complained that it had too few men working. There was no indication that the workers were inadequately skilled, and there was no evidence at all that they disregarded the instructions of the supervising engineer.

A certificate was obtained from Fluor Daniel Williams Brothers (Fluor) (the supervising engineering firm) that cause existed to terminate the work of Driver, but the evidence indicates that the method of giving written notice of termination was

not in accordance with the terms of the contract—as Mustang terminated the contract and sued Driver without giving notice as required.

The supervising engineer stated in the certificate of default that more men and equipment were needed. There is evidence, however, that the engineer actually had no idea how many men were on the job, or were needed, or what type of equipment was needed. Also, the engineer had never visited the work site or otherwise observed the operation.

The evidence also showed that Troy Construction, Inc. (Troy), the company building the south section of the pipeline, was unable to complete its portion timely, although Mustang had stated that Troy was on schedule. Further, Troy sought and obtained a thirty-day extension for adverse weather only a few days after Mustang refused to give Driver a thirty-day extension sought for the same reasons.

The foregoing constitutes some evidence to support the jury's answer to question two.

The remaining issue is whether the evidence is factually sufficient to support the answer to question two. In addition to the testimony set out above, Mustang points to the uncontrovertible fact that Driver was only fifteen percent complete with sixty percent of its time gone. Mustang points out that Driver refused to leave the wet areas and work on portions of the line that were drier—and that the moves would have been done at Mustang's expense. However, Fluor's internal reports characterized the weather conditions as "abysmal" and acknowledged twenty-six rainout days.

The contract also contains language providing for the grant of additional time in the event of lost days due to weather, and

the evidence shows that the pipeline on the south portion was delayed by at least thirty days from completion due to weather delays.[15] Further, the evidence is conflicting as to whether Driver had accepted the seven-day-a-week fourteen-week schedule with the understanding between the parties that it was necessarily dependent on the amount of weather stoppages involved.

Mustang has not shown that the jury's verdict was against the great weight of the evidence. We must therefore conclude that it was factually sufficient to support the jury's answer to question two.

In an alternative argument, Mustang also contends that a second termination provision found in Section 3.4402 of the contract authorized termination of the contract by Mustang for mere convenience, and for any reason, and that in light of that provision, the jury's finding that Mustang was unjustified in terminating the contract cannot withstand a legal or factual sufficiency review.

■ This issue was not presented to the jury. Mustang directs this court to no authority that would entitle it to obtain a verdict at this point on a ground not urged below. We have been directed to no location in the record where it was argued to the trial court. It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge. *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000).

Because of our conclusions on these contentions of error, we need not address the remaining points brought on appeal.

The judgment is affirmed.

---

**15.** There is also evidence that the **final** completion of the pipeline was delayed several

months beyond that time, although it became capable of use at the earlier time.