RENDERED: SEPTEMBER 24, 2020
TO BE PUBLISHED



# Supreme Court of Kentucky

2019-SC-0175-DG

DATE 10/15/20

MAURICE DEAL                                                    APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2018-CA-0071
JEFFERSON CIRCUIT COURT NO. 15-CR-002748

COMMONWEALTH OF KENTUCKY                                        APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REMANDING**

A circuit court jury convicted Maurice Deal of second-degree manslaughter by complicity for which the jury recommended ten years' imprisonment. On appeal, the Court of Appeals affirmed the judgment. We accepted discretionary review to address whether the trial court committed reversible error when it allowed the Commonwealth to present at trial a thirty-five-minute video of a police interview with Deal—recorded while he was in jail on the underlying charges some two months post arrest—in which Deal is shown handcuffed and wearing an inmate's orange jumpsuit. We conclude this evidentiary presentation violated Deal's constitutional right to a fair trial. Accordingly, we reverse the judgment of conviction and sentence and remand the case to the trial court for a new trial.

# I.    BACKGROUND

Joseph Keith Otis was shot dead while in a fist fight in a nightclub parking lot, and the man with whom he fought, Maurice Deal, was shot through the hand and fled the scene. While Deal was at the hospital receiving treatment for his wound, two police officers separately questioned him and apparently informed him that Otis, too, had been shot. Two days later, police arrested Deal for murder and jailed him.[1] Deal remained in jail, unable to post bail pending trial.

The video of Deal came about this way. An Assistant Commonwealth's Attorney and the lead homicide detective—one of the two officers who had interviewed Deal at the hospital—met Deal and his attorney at the jail and questioned Deal. They recorded the questioning, which lasted about thirty-five-minutes.  Throughout the interview, Deal was handcuffed and wore an orange jumpsuit designed so that the wearer can be readily identified as an inmate. During the interview, Deal admitted that he started the fight with Otis, motivated by revenge for an earlier fight in which Otis bested him. But Deal denied knowing who fired the shots that killed Otis and wounded him.

Sometime before trial, the Commonwealth furnished Deal's attorney an audio version of the interview. But on the night before trial, Deal's attorney

---

[1] Deal's brother, Norman, who was also at the club with Deal the night Otis was killed, was also indicted in connection with Otis's death. By agreement, the indictments were severed for trial, and the record does not disclose the outcome of Norman's case.

learned of the existence of a video version. Before trial started the following morning, he moved the trial court to prohibit the Commonwealth from displaying the video version to the jury. He argued that the video of Deal's statement would unduly prejudice Deal before the jury because the jury would see Deal in custody, handcuffed and dressed as an inmate, two months after his arrest on the charges on trial. In response, the Commonwealth argued that the video would not prejudice Deal because it is to be expected that an individual charged with murder would be in custody pending trial.

Without requiring the Commonwealth to respond as to why the audio version would not suffice, the trial court denied Deal's motion. The trial court agreed with the Commonwealth that because Deal was charged with murder, no one would be surprised that he was in jail. "[T]hat's just routinely done," the trial court stated. "[A]lmost everybody's in custody, eventually, especially after a murder investigation."

The Commonwealth displayed the video for the jury in its entirety during its case-in-chief, during Sergeant Wilder's testimony. Deal's counsel renewed his objection right before the Commonwealth played the video. In denying Deal's objection to the video display, the trial court granted Deal's counsel a standing objection to the playing of the video.

At trial, the Commonwealth offered evidence to prove that on the night Otis was killed, Deal conspired with his brother to confront Otis at the nightclub to exact revenge for the earlier beating. The Commonwealth asserted that Deal's brother shot and killed Otis using a gun supplied by Deal. At the

3

close of evidence, the trial court instructed the jury on murder, second-degree manslaughter, and reckless homicide. The jury found Deal guilty of second-degree manslaughter by complicity and recommended a penalty of ten years' imprisonment. The trial court accepted the jury's recommended penalty and entered final judgment accordingly.

On appeal to the Court of Appeals, Deal argued that the video presentation compromised his constitutional right to a fair trial and the presumption of innocence. He also asserted that the trial court should have, at the very least, acted on its own motion to admonish the jury that Deal's appearance in the video was not evidence of his guilt. The Court of Appeals affirmed the judgment on all issues, concluding that any error in admitting the video was harmless.

## II.    ANALYSIS

Before this Court, Deal argues that the principles established by the United States Supreme Court in *Estelle v. Williams*[2] and *Deck v. Missouri*[3] apply to his case and compel the conclusion that the trial court abused its discretion by overruling his objection to this video display. Similarly, he argues that the Court of Appeals erred by holding that even if the video was erroneously admitted, it was harmless. The Commonwealth responds by citing this Court's decisions in *Shegog v. Commonwealth*,[4] *Estep v. Commonwealth*,[5] and *Bryan v.*

---

[2] 425 U.S. 501.

[3] 544 U.S. 622.

[4] 142 S.W.3d 101 (Ky. 2004).

[5] 663 S.W.2d 213 (Ky. 1983).

4

*Commonwealth*[6] to support its argument that the Court of Appeals correctly held that the trial court did not abuse its discretion by allowing the video into evidence. The Commonwealth also asserts it even if the trial court erred, the Court of Appeals correctly deemed it harmless error.

We hold that the trial court abused its discretion by allowing this video. Showing it to the jury violated Deal's due process rights based on the rules enunciated by the Supreme Court in *Estelle v. Williams*[7] and *Deck v. Missouri*[8] and by this Court in *Shegog*,[9] *Estep*,[10] and *Bryan v. Commonwealth*.[11] And we are not persuaded that the constitutional error was harmless beyond a reasonable doubt.

## A. Standard of Review

We review objections to a trial court's evidentiary rulings for abuse of discretion.[12] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[13] Erroneous evidentiary rulings are ordinarily subject to harmless-

---

[6] 2015–SC–000467–MR, 2017 WL 1102825 (Ky. Mar. 26, 2017).

[7] 425 U.S. 501.

[8] 544 U.S. 622.

[9] 142 S.W.3d 101.

[10] 663 S.W.2d 213.

[11] 2017 WL 1102825.

[12] *Matthews v. Commonwealth,* 163 S.W.3d 11, 19 (Ky. 2005).

[13] *Commonwealth. v. English,* 993 S.W.2d 941, 945 (Ky. 1999) ("The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.").

error review under RCr[14] 9.24 and therefore may only be used as a basis to reverse or vacate a judgment if we cannot "say with fair assurance that the judgment was not substantially swayed by the error."[15] But when the evidentiary ruling is found to be erroneous because it violated a defendant's constitutional rights, the error is still subject to harmless error review *but* the error may be used as basis to reverse or vacate a judgment if we cannot say the error was harmless beyond a reasonable doubt.[16]

Because Deal claims that the trial court violated his constitutional rights to a fair trial and the presumption of innocence, Deal is entitled to a new trial if we find that the trial court abused its discretion in admitting the video and the error cannot be said to be harmless beyond a reasonable doubt.

## B. The Relevant Law

That a criminal defendant should not be required to appear before the jury in shackles is a time-honored tenet of our jurisprudence.[17] Eventually, the

---

[14] Kentucky Rules of Criminal Procedure

[15] *Ordway v. Commonwealth*, 391 S.W.3d 762, 774 (Ky. 2013); RCr 9.24 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice.").

[16] *Ordway*, 391 S.W.3d at 774 (citing *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009)).

[17] *See, e.g.*, *Tunget v. Commonwealth*, 198 S.W.2d 785, 786 (Ky. 1946) ("Was it reversible error to keep appellant in handcuffs during the trial? As a rule, we would condemn such a practice. A court would hardly be justified in permitting this to be done in one murder case out of an average hundred coming to trial; *Marion v. Commonwealth*, 108 S.W.2d 721, 723 (Ky. 1937)) ("It is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless

6

United States Supreme Court recognized that the generally accepted prohibition against shackling among the states was grounded in the right to a fair trial, a fundamental liberty secured by the Fourteenth Amendment, as a practice that "undermines the fairness of the fact-finding process."[18]

In *Estelle v. Williams*, the United States Supreme Court ruled that a trial court that compels a criminal defendant to appear before the jury in prison clothing threatens the defendant's fundamental right to a fair trial.[19] In an effort to protect the presumption of innocence during the course of a criminal trial, a basic component of the right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment, the Court directed trial courts to "be alert to factors that may undermine the fairness of the fact-finding process."[20] The Court further directed that, in analyzing the impact of a particular trial event on the judgment of the jury, courts are to apply "close judicial scrutiny" and "must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience."[21] The Court reiterated, however, that not all federal constitutional errors require automatic reversal of the challenged conviction.[22] For example,

---

in exceptional cases where there is evident danger of his escape or in order to protect others from an attack by the prisoner.").

[18] *Estelle,* 425 U.S. at 503.

[19] *Id.* at 504–05.

[20] *Id.* at 502 (citing *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481, 491 (1895)).

[21] *Id.* at 504.

[22] *Id.* at 507 (explaining that not all constitutional violations require reversal because there could be some errors that are so "'unimportant and insignificant'" considering the setting of a particular case) (quoting *Chapman v. California,* 386 U.S.

7

the *Estelle* Court indicated that even in circumstances where a particular practice poses an inherent threat to a defendant's right to a fair trial, the practice may still be constitutional where it serves some "essential state interest."[23]

Following *Estelle*, the Supreme Court in *Holbrook v. Flynn* relied on the principles in *Estelle* to determine whether the defendant's right to a fair trial was violated when the trial court, citing security concerns, permitted several uniformed officers to be present during trial.[24] The Court explained that certain practices require "'close judicial scrutiny[,]'" because the practice had been found "to pose such a threat to the 'fairness of the factfinding process,'"[25] but "this close scrutiny of inherently prejudicial practices" is not always fatal:[26]

> Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial."[27] This does not mean, however, that every practice tending to single out the

18, 21–22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967)). For example, the *Estelle* Court discussed a case that upheld a conviction where the defendant was tried in jail clothes for crimes he committed while in prison because it found that "'no prejudice can result from seeing that which is already known.'" *Id.* (quoting *United States ex rel. Stahl v. Henderson*, 472 F.2d 556 (5th Cir. 1973)).

[23] *Id.* at 505.

[24] 475 U.S 560, 562–67, 106 S.Ct. 1340, 1342–45, 89 L.Ed.2d 525 (1986).

[25] *Id.* at 568 (quoting *Estelle*, 425 U.S. at 503–505).

[26] *Id.* (discussing *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), wherein "the Court emphasized that a defendant may be prejudiced if he appears before the jury bound and gagged[,]" but nonetheless held that the practice may be reasonable in certain situations)).

[27] *Id.* at 567 (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468 (1978)).

accused from everyone else in the courtroom must be struck down. . . . When defense counsel vigorously represents his client's interests and the trial judge assiduously works to impress jurors with the need to presume the defendant's innocence, we have trusted that a fair result can be obtained.[28]

The Court ultimately ruled that having uniformed officers present during trial does not always pose a threat to the fairness of the factfinding process because, unlike in cases where a defendant is shackled while appearing before the jury, there are a variety of ways in which officers can be deployed that do not prejudice the defendant, and a jury could draw a wider range of inferences from having officers present that do not involve speculations regarding any danger posed by the defendant.[29] Accordingly, the Court opted to adopt a case-by-case approach where it considers whether the officers present in a specific case were so inherently prejudicial that the defendant was denied his constitutional rights.[30]

Finally, in *Deck v. Missouri*, the Supreme Court considered whether the defendant's due process rights were violated when the defendant was visibly shackled during the penalty phase of a trial.[31] The Court explained that the rule prohibiting a trial court from shackling a defendant during the guilt phase of a jury trial serves to protect three fundamental legal principles:[32] (1) "[t]he criminal process presumes that the defendant is innocent until proved

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Deck*, 544 U.S. at 624.

[32] *Id.* at 631–32.

guilty;"[33] (2) the Constitution provides an accused with a right to counsel in order to help him secure a meaningful defense;[34] and (3) the trial judge "must seek to maintain a judicial process that is a dignified process[,] . . . which includes the respectful treatment of defendants [and] reflects the importance of the matter at issue[.]"[35]

The Court explained that the first principle is similarly undermined by the shackling practice during the penalty phase because it still suggests to the jury "that court authorities consider the offender a danger to the community," which is "often a statutory aggravator and nearly always a relevant factor" to be considered by the jury.[36] Even though the presumption no longer applies during the penalty phase, the Court explained that this suggestion could still influence the jury while it was making the equally important decision between life and death by undermining the jury's ability to weigh accurately all relevant considerations.[37] The second principle is diminished by the shackling practice during the penalty phase because it equally interferes with the defendant's "ability to communicate' with his lawyer" and "participate in his own

---

[33] *Id.* 630 (citing *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895)).

[34] *Id.* 631 (citing CONST. AMEND. XI; *Gideon v. Wainwright,* 372 U.S. 335, 340–41, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)).

[35] *Id.* (quoting *Allen,* 397 U.S. at 344, for the proposition that the use of shackles at trial "'affront[s]'" the "'dignity and decorum of judicial proceedings that the judge is seeking to uphold[]'").

[36] *Id.* 632–33.

[37] *Id.*

defense."[38] Finally, the third fundamental principle is undermined by the shackling practice in the penalty phase because it "'affront[s] . . . [the] dignity and decorum of judicial proceedings that the judge is seeking to uphold.'"[39]

Based on these findings, the *Deck* Court ruled that "the Fifth and Fourteenth Amendments prohibit the use of visible physical restraints [during either the guilt or penalty phase] visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."[40] Furthermore, the court reaffirmed that where such violation is found, the defendant is entitled a reversal unless the state satisfies its burden to prove "beyond a reasonable doubt" that the erroneous shackling did not influence the verdict.[41] The Court reversed Deck's sentence, holding that the trial court abused its discretion because it failed to indicate any "special circumstances" were present that suggested a need to shackle Deck during the sentencing phase, and to explain why it chose not to shackle Deck in a way that the jury could not see.[42]

In line with its own precedent, Kentucky formally adopted and implemented the fundamental principles established in *Estelle, Holbrook* and

---

[38] *Id.* at 631–32 (citing *Allen,* 397 U.S. at 344).

[39] *Id.* (quoting *Allen,* 397 U.S. at 344).

[40] *Id.* at 629–30. The *Deck* Court explained that its prior decisions in *Estelle* and *Allen* "gave voice to a principle deeply embedded in the law" that it is inherently prejudicial to compel a defendant during the guilt phase of his trial to appear before the jury wearing shackles. 544 U.S. at 629.

[41] *Id.* at 635 (internal quotation marks and citations omitted).

[42] *Id.* at 634–35

*Deck.* RCr 8.28(5) codifies the rules announced in those cases, providing that "[d]uring his or her appearance in court before a jury the defendant shall not be required to wear the distinctive clothing of a prisoner. Except for good cause shown the judge shall not permit the defendant to be seen by the jury in shackles or other devices for physical restraint." This Court has also applied these principles in several cases.[43]

In *Estep v. Commonwealth*, this Court rejected the defendant's challenge to the trial court's decision to admit a photograph that showed the defendant wearing handcuffs at the time of his arrest.[44] Because *Estep* came before this Court in 1983, the Court did not have the benefit of the Supreme Court's 1986 and 2005 decisions in *Holbrook* and *Deck* to aid in deciding this case. Instead, the Estep court was guided only by the Supreme Court's directives in *Estelle*

---

[43] This Court in *Scrivener v. Commonwealth* applied the rule articulated in *Estelle* to hold that the defendant's conviction must be reversed, despite "overwhelming evidence of appellant's guilt," because the trial court failed to grant the defendant's motion for a continuance so that he could be tried in street clothing rather than prison clothing. 539 S.W.2d 291, 292 (Ky. 1976). In *Commonwealth v. Conley*, this court also emphasized the responsibility of the trial court in these cases to not restrain the defendant by handcuffs or shackles unless and until it determines that restraint of the defendant is necessary to serve the state's essential interests in preventing the defendant's escape and protecting the safety of those in the courtroom. 959 S.W.2d 77–78. The *Conley* court held that the trial court did not abuse its discretion in ruling that the defendant be kept in shackles during trial because the defendant had a demonstrated history of fleeing state custody, the trial court only so ruled after considering relevant case law and available alternatives for courtroom security, and the trial court examined and issued several admonition to prospective jurors regarding the presumption of innocence and its relationship to the shackles placed on the defendant. *Id.* at 78–79. Furthermore, in *Stacy v. Commonwealth*, this Court affirmed a defendant's conviction even though the trial court engaged in an "intrinsically prejudicial" practice by requiring the defendant's witnesses to testify before the jury while handcuffed and dressed in prison clothing. 396 S.W.3d 787, 800–03 (Ky. 2013).

[44] 663 S.W.2d at 216.

12

that courts must "be alert to factors that may undermine the fairness of the fact-finding process,"[45] and must draw on their own reason, principle, and common human experience" to determine the "likely effects of a particular procedure."[46]

In *Estep,* the Court did not provide a detailed discussion of defendant's challenge to the trial court's decision, nor did it discuss or cite to the Supreme Court's decision in *Estelle* in considering the challenged practice. But the Court clearly followed the holding in *Estelle* when it explained that it could not find that the trial court's decision prejudiced Estep because "[t]he trial court noted that the pictures were being offered for the purpose of showing how Estep looked the night of his arrest[,] . . . that testimony had been previously given that Estep was handcuffed as he was arrested, [and the trial court] admonished the jury that the handcuffs had no significance . . . ."[47]

Similarly, in *Shegog v. Commonwealth,* this Court held that the defendant was not entitled to reversal of his conviction based on the allegation that several potential jurors watched as he was transported from the jail to the courthouse in handcuffs.[48] We reaffirmed that "the inadvertent viewing of the

---

[45] 425 U.S. at 502.

[46] *Id.* at 504.

[47] 663 S.W.2d at 216. The Court did not, however, follow the Supreme Court's lead in *Estelle* by considering, for example, the approaches taken by other courts that had considered the constitutionality of the practice that was challenged in *Estep,* or whether the challenged practice usually operated only against those who cannot afford to make bail to be released pending trial. *See Estelle,* 425 U.S. at 503–06.

[48] 142 S.W.3d at 108.

13

defendant in handcuffs for the sole purpose of being taken to or from the courtroom is not automatically reversible error."[49]

Like the *Estep* court, the *Shegog* court did not provide a detailed discussion of the applicable principles under *Estelle, Holbrook,* and *Deck.* It is clear, however, that the court did engage in the required analysis before concluding that Shegog was not entitled to a reversal of his conviction. The *Shegog* court noted that the trial court fulfilled its responsibility to consider whether the practice was inherently prejudicial when it indicated that "the inadvertent viewing of the defendant in handcuffs" may constitute an "inherently prejudicial" trial error in some circumstances, but that it could not find that the inadvertent viewing in this case prejudiced Shegog since defense counsel did not question the potential jurors about it in voir dire.[50] In support of this finding, this Court also observed that when the trial court denied the request for a continuance it relied on the sentiments expressed in *Davis v. Commonwealth* that "'it would be impossible as a practical matter to conduct a trial without the jury seeing some sign that the defendant [is] not entirely free to come and go as [he] please[s].'"[51]

---

[49] *Id.* at 108–09 (citing *Moss v. Commonwealth,* 949 S.W.2d 579, 582–83 (Ky. 1997)).

[50] *Id.* at 109.

[51] *Id.* (quoting *Davis v. Commonwealth,* 899 S.W.2d 487, 491 (Ky. 1995), *overruled on other grounds in Merriweather v. Commonwealth,* 99 S.W.3d 448 (Ky. 2003)).

14

Finally, in *Bryan v. Commonwealth*, an unpublished opinion from 2017, we rejected the defendant's challenge to the trial court's decision to admit a video of the defendant's police interview, which depicted Bryan wearing a prison jumpsuit and handcuffs.[52] Like in *Estep*, the Bryan court did not engage in the type of analysis that was seen in *Holbrook* and *Deck*. Instead, in *Bryan* we simply stated, citing only to our decision in *Estep*, that we could not find that the trial court abused its discretion in admitting the video because "[w]e have previously affirmed convictions where the jury witnessed the defendant in either shackles or handcuffs[, and] [t]he error, if any, was harmless."[53]

Unlike in *Shegog* and *Estep*, it is unclear whether the Court in *Bryan* relied on the directives provided by the Supreme Court to hold that the trial court did not err in admitting the video of the defendant's police interview and any error that did occur was harmless. But there is also no indication in the opinion that the defendant objected at trial to allowing the jury to view the video of his interview with police. As such, the *Bryan* court did not err in summarily concluding that trial court did not abuse its discretion in admitting the video based on this Court's decision in *Estep*.

## C. The Applicable Standard

It is fair to say that the cases discussed above establish that trial courts must conduct a certain analysis in cases where a defendant challenges a trial event claiming the event undermines the jury's ability to decide the case fairly.

---

[52] 2017 WL 1102825, at *6.

[53] *Id.*

15

But it is also fair to say that this Court has never articulated the required analysis since the Supreme Court decided *Estelle*, *Holbrook*, and *Deck*. We take the opportunity now.

First, when a defendant objects to a specific trial event, the trial court, in the exercise of its discretion, has a responsibility under the Fourteenth Amendment to consider whether the practice is "inherently prejudicial."[54] As the Court explained in *Holbrook*, a practice is generally found to be "inherently prejudicial" when it threatens the fairness of the factfinding process by undermining the defendant's right "'to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'"[55]

In carrying out this responsibility, the trial court must engage in a thorough analysis and "closely" consider any factors relevant in the specific

---

[54] *See Deck*, 544 U.S. at 630 (discussing the Court's prior decision to determine whether shackling the defendant during the penalty phase of the trial posed a similar risk to the defendant's constitutional right as the practice does when employed during the guilt phase of the trial); *Holbrook*, 475 U.S. at 567 (holding that the uniformed officers present during the defendant's trial were not "inherently prejudicial" based on the finding that the officers in the case did not pose the same risk to the defendant's constitutional rights as routinely shackling the defendant when he appears before the jury); *Estelle* , 425 U.S. at 504 (justifying its holding that compelling a criminal defendant to appear before the jury in prison clothing by citing to several other courts' decisions that have prohibited the practice based on the threat the practice poses to the presumption of innocence entitled to all criminal defendants); *Stacy*, 396 S.W.3d at 800–01 (stating that to determine whether the defendant's fair trial rights were violated by the trial court allowing the defendant's incarcerated witnesses to testify while wearing shackles and prison attire, the Court must determine first whether the practice is "intrinsically prejudicial . . . , and if so whether sufficient state interests exist to justify its existence[]").

[55] *Holbrook*, 475 U.S. at 567 (quoting *Taylor*, 436 U.S. at 485).

case,[56] including: the likelihood that the challenged event could be interpreted by the jury as indicating that the defendant has already been adjudged to be particularly dangerous or culpable;[57] the reasoning behind other courts' decisions when faced with similar cases;[58] and the likelihood that the event would normally operate to the disadvantage only to those defendants who are unable to post bond to be released pending trial.[59] If the trial court finds that the challenged event is "inherently prejudicial," or prejudicial based on the circumstances of a particular case, the trial court may only exercise its

---

[56] *See Estelle*, 425 U.S. at 502–04 (directing trial courts to "be alert to factors that may undermine the fairness of the fact-finding process[,]" and explaining that courts are to apply "close judicial scrutiny" when analyzing the impact of a particular trial event on the judgment of the jury and "do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience")(citing *Coffin*, 156 U.S. at 453).

[57] *See Holbrook*, 475 U.S. at 569 (finding that the jury could have drawn a wider range of inferences from having the uniformed officers present during Holbrook's trial that many of which do not all involve speculations regarding any danger posed by Holbrook).

[58] *See Deck*, 544 U.S. at 630 (explaining that the Court's prior decisions in *Estelle* and *Holbrook* indicated that the primary motivation behind the guilt-phase constitutional rule is to protect "three fundamental legal principles" that are undermined or threatened by practices such as shackling the defendant when he appears before the jury); *Holbrook*, 475 U.S. at 567 (discussing the Court's prior decisions in *Estelle*, 425 U.S. 501, and *Allen*, 397 U.S. 337, to illustrate how the practice challenged in this case differed from the practices deemed to be constitutionally prohibited absent a showing that the practice is necessary to serve an essential state interest); *Estelle*, 425 U.S. at 504 (discussing several lower federal court cases already confronted the practice at issue in this case and prohibited or criticized it).

[59] *See Holbrook*, 475 U.S. at 567; *Estelle*, 425 U.S. at 504–05. Recall that the *Estelle* Court established that "[t]o impose [a] condition on one category of defendants, over objection, would be repugnant to the concept of equal justice embodied in the Fourteenth Amendment." *Estelle*, 425 U.S. at 504–05.

discretion to allow the proposed event if it finds that the event is nonetheless justified by some identifiable and essential state interest.[60]

In determining whether the challenged event is justified by an essential state interest, the trial court is directed to engage in a thorough analysis of any factors that are relevant in the particular case. For example, the Supreme Court and this Court have considered factors such as: (1) the merits of the asserted state interest;[61] (2) the potential threat posed by the challenged event to the defendant's constitutional rights;[62] and (3) the availability of alternatives

---

[60] *See Deck*, 544 U.S. at 634–35 (holding that the trial court erred in shackling the defendant during the penalty phase of the trial because the trial court failed to indicate that it considered any "special circumstances" that suggested a need to shackle Deck); *Holbrook*, 475 U.S. at 571–72 (explaining that even if the court's decision allow the four uniformed police officers to be present during Holbrook's trial did prejudice the defendant, "the State's need to maintain custody over defendants who had been denied bail after an individualized determination that their presence at trial could not otherwise be ensured" justified the trial court's decision); *Estelle*, 425 U.S. at 505 (finding that no state interest was served by requiring a defendant to appear at trial in jail clothing);

[61] *See, e.g., Holbrook*, 475 U.S. at 571–72 (explaining that even if the court's decision to allow the four uniformed police officers to be present during Holbrook's trial did prejudice the defendant, "the State's need to maintain custody over defendants who had been denied bail after an individualized determination that their presence at trial could not otherwise be ensured" justified the trial court's decision); *Conley*, 959 S.W.2d at 78–79 (holding that the trial court did not abuse its discretion in ruling that the defendant be kept in shackles during trial given that the defendant had a demonstrated history of fleeing state custody).

[62] *See, e.g., Holbrook*, 475 U.S. at 567 (ruling that having uniformed officers present during trial does not always pose a threat to the fairness of the factfinding process because, unlike in cases where a defendant is shackled while appearing before the jury, there are a variety of ways in which officers can be deployed by trial courts that do not prejudice the defendant and a jury could draw a wider range of inferences from having officers present that do not all involve speculations regarding any danger posed by the defendant); *Estelle*, 425 U.S. at 502 (explaining that the presumption of innocence is a basic component of the right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment, and to protect this fundamental right, the Court directed trial courts to "be alert to factors that may undermine the fairness of the fact-finding process[]") (internal citations omitted).

18

that could minimize the risk posed to the defendant's rights while still acting to serve the asserted state interest.[63] As to the last factor, this Court has made clear that a trial court will usually be able to minimize any risk posed to the defendant's right by admonishing the jury that the trial practice is not to be considered in determining guilt.[64]

Finally, in cases where an "inherently prejudicial" trial event that does not serve an essential state interest is implemented, prejudice is presumed on appellate review of the trial court's decision,[65] and the defendant is entitled to reversal of his conviction unless the defendant did not challenge the event

---

[63] *See, e.g., Deck,* 544 U.S. at 634–35 (holding that the trial court erred in shackling the defendant during the penalty phase of the trial in part because the trial court failed to explain why it chose not to shackle Deck in a way that the jury could not see); *Conley,* 959 S.W.2d at 78–79 (holding that the trial court did not abuse its discretion in ruling that the defendant be kept in shackles during trial given that the defendant had a demonstrated history of fleeing state custody, the trial court only so ruled after considering relevant case law and available alternatives for courtroom security, and the trial court examined and issued several admonitions to prospective jurors regarding the presumption of innocence and its relationship to the shackles placed on the defendant).

[64] *See, e.g., Estep v. Commonwealth,* 663 S.W.2d 213, 215 (Ky. 1983) (explaining that it could not find that the trial court's decision to admit a photograph even though it depicted the defendant, at the time of his arrest, wearing handcuffs prejudiced Estep because, among other things, the trial court "admonished the jury that the handcuffs had no significance" in determining Estep's guilt).

[65] *See, e.g., Deck,* 544 U.S. at 635 (concluding that where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation[,]" as it becomes the burden of the State in those circumstances to prove "beyond a reasonable doubt" that the erroneous shackling of the defendant did not impact the ultimate verdict).

before the trial court,[66] or unless the state can affirmatively show beyond a reasonable doubt that the event did not prejudice the defendant.[67]

## D. The Standard as Applied in Similar Cases

A standard like the one articulated above has been applied in cases where a jury viewed a criminal defendant in handcuffs or jail garb in-person or in a photograph. While neither this Court nor the United States Supreme Court has had the opportunity to analyze a videotaped presentation like the one in the present case,[68] other state appellate courts have considered cases that presented similar facts.

In *State v. Taylor*, for example, the Tennessee Supreme Court considered whether the trial court erred in allowing the jury to view a videotape in which the defendant appeared in custody and dressed in jail attire.[69] The challenged video in *Taylor* was recorded while the State was working with a jail informant

---

[66] *See, e.g., Estelle,* 425 U.S. at 510–13 (concluding that Williams was not entitled to reversal of his conviction because it was undisputed that Williams did not object before the trial court to being tried in jail clothing, the Court could not conclude that Williams was *compelled* to stand trial in jail clothing in violation of the Fourteenth Amendment).

[67] *See, e.g., Deck,* 544 U.S. at 635 (concluding that where a court, without adequate justification, orders the defendant to wear visible shackles before the jury, prejudice is presumed, and reversal is required unless the State proves "beyond a reasonable doubt" that the erroneous shackling of the defendant did not impact the ultimate verdict).

[68] This Court in *Bryant* was presented with similar facts, and it indicated that it would be reluctant to find any error in admitting the video based on this Court's decision in *Estep.* 2015–SC–000467–MR, at *6. The case at bar is different because Deal did preserve his objection to admitting the challenged video depicting him in jail garb and shackles.

[69] 240 S.W.3d 789 (Tn. 2007).

who claimed that the defendant had previously confessed to the crimes.[70] The Tennessee Supreme Court held that the trial court did not err in admitting the video because it did not result in a violation of the defendant's constitutional rights.[71]

In its discussion of the defendant's claim that the video violated his constitutional rights, the Tennessee Supreme Court explained that the facts relied on by the Supreme Court in *Estelle* are distinguishable from Taylor's case because: the defendant was not tried while dressed in jail attire; the jury only saw a brief videotape of defendant wearing jail attire; the video was not the cause of the potential prejudice arising from discovering that the defendant was jailed because the jury already knew before viewing the videotape that the defendant was in jail based on the informant's testimony; and because the trial took place over 3 days, and the video was only seven-minutes long.[72] While it "caution[ed] trial courts that unnecessary displays of a criminal defendant bearing the badges of custody should be avoided," the court ultimately held

---

[70] *Id.* at 793.

[71] *Id.* at 794–97. The defendant in *Taylor* also argued that the video violated his constitutional rights because the State had an audio version of his conversation with the informant, but the court declined to consider this factor in its analysis because it agreed with the State's argument that the defendant had waived this argument by failing to include the audiotape in the appellate record. *Id.* at 795 (citing *State v. Ballard*, 855 S.W.2d 557, 560–61 (Tenn. 1993)).

[72] *Id.* at 795–96. The Tennessee Supreme Court explained that the Supreme Court in *Estelle* "recognized that 'the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play.'" *Id.* (quoting *Estelle*, 425 U.S. at 504–05, 512).

that "[u]nder these circumstances, . . . the brief videotape . . . did not serve as a 'constant reminder' to the jury that the Defendant had been previously jailed and it did not corrupt the presumption of innocence on which the jury was properly instructed."[73]

The Tennessee Supreme Court in *Taylor* also explained that its holding was supported by several similar cases that were decided by courts in other states.[74] In sum, like the Supreme Court in *Holbrook*, the Tennessee Supreme Court, as well as the state court decisions that it cited, concluded in the first instance that admitting video evidence depicting a defendant in jail custody is not "inherently prejudicial" under all circumstances. And we do not disagree with that point.

Common sense suggests that the impact of allowing a brief videotaped presentation to the jury depicting the defendant in jail attire or shackles is not as damaging as requiring a defendant to appear that way in person before the jury. But we remain convinced that videos of the defendant "bearing badges of

---

[73] *Id.* at 796–97.

[74] *Id.* at 797 (discussing *State v. Schaller*, 199 Wis.2d 23, 544 N.W.2d 247 (App.1995)), *State v. Atwood*, 171 Ariz. 576, 832 P.2d 593, 645 (1992), *overruled on other grounds by State v. Nordstrom*, 200 Ariz. 229, 25 P.3d 717, 729 (2001), and *Anderson v. State*, 574 So.2d 87 (Fla. 1991)). For example, the Tennessee Supreme Court explained that the Supreme Court of Florida "rejected [a] defendant's contention that he had been denied a fair trial because the jury was shown a one and one-half minute long videotaped news report that briefly depicted the defendant in jail clothes." *Id.* (citing *Anderson*, 574 So.2d at 93–94 (Fla. 1991)). The Supreme Court of Florida concluded that "'[u]nder the circumstances, there was no "constant reminder of the accused's condition" to support the conclusion that [the defendant] was denied a fair trial.'" *Id.* (quoting *Anderson*, 574 So.2d at 93-94 (quoting *Estelle*, 425 U.S. at 504, 96 S.Ct. 1691))).

custody" pose a threat to the defendant's right to a fair trial because it tends to suggest to the jury that some official determination has already been made that the defendant needs to be restrained and separated from society. This is especially true when, as in Deal's case, the jury was able to see and hear testimony to the effect that the jail interview was recorded months after the defendant was arrested on the underlying charges.

### E. The Standard as Applied to Deal's Case

Applying to Deal's case the standards discussed above, we conclude that Deal is entitled to reversal of his conviction because the video was prejudicial based on specific circumstances of Deal's case, the trial court abused its discretion in admitting the video without engaging in the required analysis, and the Commonwealth failed to prove beyond a reasonable doubt that this error did not influence the jury's verdict.

With respect to the first step of the analysis, the trial court here failed to consider on the record whether playing this video was inherently prejudicial. In a conclusory way, it dismissed Deal's requests to require the Commonwealth to present the audio version of his interview, or, at a minimum, offer some explanation for using the video instead of the audio. The trial court stated that it was expected—presumably saying unexpected by the average juror—that Deal would be in custody because he was accused of murder. The trial court's statement, "that's just routinely done, almost everybody's in custody, eventually, especially after a murder investigation," suggests that the trial court was echoing words from *Davis* that "it would be impossible as a practical

23

matter to conduct a trial without the jury seeing some sign that the defendant [is] not entirely free to come and go as [he] please[s]."[75] But the facts of the present case are that the challenged video was a production by the principal investigating officer in testimony during the Commonwealth's case-in-chief. The present facts are fundamentally different from *Davis*, a case in which jurors' inadvertently viewed the defendant in handcuffs as he entered the courtroom at the commencement of trial.[76]

As indicated above, we believe that Deal's video, as it was presented to the jury below, was prejudicial. Unlike the defendant in *Taylor*, Deal was depicted in the video wearing both jail clothing and shackles,[77] and the video was 35 minutes, not merely 7. Also, the video of Deal was recorded two months after Deal was arrested on the present charge, and this fact was apparent to the jury because the date stamp appears prominently at the bottom of the video.

With respect to the second step of the analysis, despite the circumstances present in Deal's case, the trial court further failed to consider whether Deal's video would nonetheless be prejudicial. There certainly could have been ways to minimize this risk, such as admitting the audio version of

---

[75] *Davis*, 899 S.W.2d at 491.

[76] *Id.* at 490.

[77] Recall that the Supreme Court in *Deck* explained that its prior decisions in *Estelle* and *Illinois v. Allen*, 397 U.S. 337, 343–44, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) "gave voice to a principle deeply rooted in the law" that it is inherently prejudicial to compel a defendant during the guilt phase of his trial to appear before the jury wearing shackles." 544 U.S. at 629.

the same interview or admonishing the jury that Deal's appearance in the video should not be considered in determining guilt.[78] But there appears no indication of the trial court's consideration of such alternatives or safeguards. And even if it had, the trial court should have then required the Commonwealth to explain how the video serves an essential state interest, which could have been accomplished by simply requiring the Commonwealth to explain how the audio version would not effectively present the intended evidence and why the evidence in video format was crucial for proving the Commonwealth's case.

Finally, as we consider the arguments before us, we conclude that the Commonwealth failed to argue the existence of proof beyond a reasonable doubt that the trial court's decision to allow the video did not prejudice Deal. The Commonwealth argues that any error committed by the trial court in admitting the video or failing to give an admonition was harmless because

---

[78] *See, e.g., Estep,* 663 S.W.2d at 215 (explaining that it could not find that the trial court's decision to admit a photograph even though it depicted the defendant, at the time of his arrest, wearing handcuffs prejudiced Estep because, among other things, the trial court "admonished the jury that the handcuffs had no significance" in determining Estep's guilt). We agree with the Commonwealth and the Court of Appeals in this case that this Court has generally held that "a defendant who wants the court to admonish the jury must ask for such relief; otherwise, his failure to request it will be treated as a waiver or as an element of trial strategy." *Hall v. Commonwealth.,* 817 S.W.2d 228, 229 (Ky. 1991), *overruled on other grounds in Commonwealth. v. Ramsey,* 920 S.W.2d 526 (Ky. 1996). However, we do not agree with the insinuation that by failing to request a jury admonition regarding what purpose the video is to serve in determining guilt Deal waived any argument relating to the trial court's failure to issue such an admonition. Deal's failure to request an appropriate admonition when it objected to admitting the video of his police interview has no bearing on the trial court's initial failure to properly analyze whether Deal's constitutional rights were threatened by admitting the video.

there is "no substantial possibility that the result would have been different if the Commonwealth had played the audio recording of the interview."

In support of this argument, the Commonwealth makes the following assertions: (1) the investigating detective had already testified about Deal's arrest, so the jury already knew that Deal had been taken into custody; (2) the video of Deal's police interview was consistent with Deal's defense; (3) and the video was only a "short portion of a multi-day trial" in which Deal was personally present in street clothes and maintaining a tidy appearance. In response, Deal argues that the Commonwealth could not prove that the challenged video did not impact the verdict because the evidence against Deal was not overwhelming.

While we concede that the assertions made by the Commonwealth in support of its argument that the video did not prejudice Deal are relevant,[79] the Commonwealth has not explained how these assertions prove beyond a reasonable doubt that the video did not prejudice Deal by influencing the jury's verdict. Furthermore, the Commonwealth fails to discuss any relevant case

---

[79] The Tennessee Supreme Court made similar assertions in support of its holding in *Taylor*. 240 S.W.3d at 795–97 (explaining that, because the defendant was not tried while dressed in jail attire; the jury only saw a brief videotape of defendant wearing jail attire; the video was not the cause of the potential prejudice arising from discovering that the defendant was jailed because the jury already knew before viewing the videotape that the defendant was in jail based on the informant's testimony; and because the trial took place over 3 days, and the video was only seven-minutes long, the facts relied on by the Supreme Court in *Estelle* are distinguishable from Taylor's case, and holding that "[u]nder these circumstances, . . . the brief videotape . . . did not serve as a 'constant reminder' to the jury that the Defendant had been previously jailed and it did not corrupt the presumption of innocence on which the jury was properly instructed").

that supports its assertion that Deal was not prejudiced. Accordingly, we cannot conclude that the Commonwealth satisfied its burden of demonstrating beyond a reasonable doubt that the practice did not impact the verdict.

In sum, we conclude that while not "inherently prejudicial," the video prejudiced Deal and the trial court failed to take any of the required steps to determine if the prejudicial nature of the video was justified by an essential state interest, or whether the risk posed to Deal's constitutional rights could otherwise be minimized by some available alternative.

On remand, if the Commonwealth again moves to allow the jury to view the videotape of Deal's interview in the same format, the trial court should require the Commonwealth to prove that the video is necessary to serve an essential state interest. If, in the exercise of its discretion, the trial court believes the video is necessary to serve the asserted state interest and that interest could not be served by any available alternatives, it is within the trial court's discretion to admit the video. But the trial court must still consider whether any additional steps should be taken to minimize the risk posed to Deal's constitutional rights, which could include issuing an appropriate admonition to the jury.

## III. CONCLUSION

The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

All sitting. All concur.

27

COUNSEL FOR APPELLANT:

Euva D. May
Leo Gerard Smith
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Emily Bedelle Lucas
Office of the Attorney General